UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TERRY LEE CALLENDRET,<br><br>                 Plaintiff,<br><br>   v.<br><br>T. THRASHER, et al.,<br><br>                 Defendants. | CASE NO. 3:19-CV-5271-BHS-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: July 17, 2020 |

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently pending before the Court are Defendants Josh Adams, Stefanie Baltzell, Celeste Ernst, Casey Kaech, Arben Kullojka, Eric Leverington, Joiann Miller, Chris Newton, Karie Rainer, Jeremy Scott, Julie Smith, Timothy Thrasher, and Joseph Uglick's Motion for Summary Judgment and Plaintiff Terry Lee Callendret's Motion for Summary Judgment. Dkt. 49, 57.

After reviewing the relevant record, the Court finds the evidence fails to show several Defendants personally participated in the alleged unconstitutional conduct or that a genuine issue of material fact exists regarding Plaintiff's Eighth and Fourteenth Amendment claims. Further,

1 | Plaintiff's request for reinstatement of his good time and earned time credits is not cognizable in
2 | this § 1983 action. Therefore, the Court recommends Defendants' Motion for Summary
3 | Judgment (Dkt. 49) be granted, Plaintiff's Motion for Summary Judgment (Dkt. 57) be denied,
4 | and this case be closed.

5 | **I.      Background**

6 | Plaintiff, an inmate currently housed at the Washington State Penitentiary ("WSP"), alleges
7 | Defendants failed to protect him from a serious risk of harm. Dkt. 27. Specifically, Plaintiff states
8 | he was involved in a race riot at WSP on September 19, 2018. *Id*. at pp. 8-9. Plaintiff contends
9 | Defendants transferred Plaintiff to Clallam Bay Corrections Center ("CBCC") on December 5,
10 | 2018, where he was housed with friends of the gang members who attacked him at WSP during the
11 | riot. *Id*. Plaintiff also states that, on January 4, 2019, Plaintiff was placed in CBCC's Intensive
12 | Management Unit ("IMU") after CBCC staff received information from a confidential source that
13 | Plaintiff was going to be assaulted by multiple prisoners of a different race. *Id*. Further, Plaintiff
14 | alleges he lost good time and earned time credits while he was housed in the IMU. *Id*. at p. 9.
15 | Plaintiff states Defendants' conduct violated his Eighth and Fourteenth Amendment rights and he
16 | requests reinstatement of his good time and earned time credits. *Id*. at pp. 9, 13.

17 | Defendants filed their Motion for Summary Judgment and supporting evidence on March
18 | 12, 2020. Dkt. 49-52. The Court provided Plaintiff with an extension of time to file a response to
19 | Defendants' Motion for Summary Judgment. Dkt. 56. Plaintiff did not file a response to
20 | Defendants' Motion for Summary Judgment; rather, on May 6, 2020, Plaintiff filed his Motion for
21 | Summary Judgment and supporting evidence. Dkt. 57. Defendants filed a Response to Plaintiff's
22 | Motion for Summary Judgment with supporting evidence on May 22, 2020. Dkt. 59, 60.
23 | Defendants also filed "Defendants' Reply to Plaintiff's Response to Defendants' Motion for
24 |

Summary Judgment" on May 29, 2020. Dkt. 61. Plaintiff filed a Reply to Defendants' Response to his Motion for Summary Judgment on June 3, 2020. Dkt. 62.

## II.  Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III.  Evidence

The undisputed evidence shows Plaintiff, who is documented to be in a Serious Threat Group ("STG"), was actively engaged in a fight/riot at WSP on September 19, 2018. Dkt. 50-1, p. 2. Plaintiff was issued a serious infraction report. *Id*. Plaintiff provided a written document stating he was only guilty of fighting with another prisoner and he waived his right to appear at the infraction hearing. *Id*. at p. 4. The hearing officer, non-party Mark Knighton, found Plaintiff

1  guilty of being involved in a riot, fighting with another offender, and refusing to stop when
2  ordered. *Id*. at pp. 6-7.

3  Two Department of Corrections ("DOC") employees, who are not named as defendants
4  in this lawsuit, developed a classification plan for Plaintiff which recommended demoting
5  Plaintiff from medium custody to maximum custody due to Plaintiff's involvement in the riot at
6  WSP. Dkt. 50-1, p. 12. On November 16, 2018, Defendants Thrasher, Uglick, Newton, and Scott
7  were present during a committee meeting regarding Plaintiff's classification plan. *Id*. The
8  committee determined Plaintiff should not be placed in maximum custody. *Id*. Instead, the
9  committee demoted Plaintiff to close custody and transferred him to CBCC. *Id*.

10  On January 4, 2019, at approximately 12:15 p.m., CBCC staff received confidential
11  information that Plaintiff could be a target for an assault. Dkt. 51, Adamire Dec., ¶ 3. The CBCC
12  staff did an initial verification of the information and determined Plaintiff should be placed in
13  administrative segregation. *Id*. at ¶ 4. At 1:10 p.m., approximately an hour after receiving
14  information of the threat, non-party Vance Adamire completed a "segregation authorization" to
15  place Plaintiff in administrative segregation. *Id*. Plaintiff was placed in administrative
16  segregation in CBCC's IMU "prior to the inmates in the unit going to recreation." *Id*.

17  Following an investigation, the information regarding the threats to Plaintiff was found to
18  be reliable. *Id*. at ¶ 5. Non-party DOC employees determined Plaintiff could not return to
19  CBCC's general population due to safety concerns from a particular STG group. Dkt. 50-1, p.
20  15. The DOC employees recommended Plaintiff be demoted to maximum custody due to his
21  infraction history and limited close custody options. *Id*. On February 14, 2019, Defendants
22  Thrasher, Uglick, and Newton were present during a committee meeting to discuss Plaintiff's
23  classification. *Id*. at p. 16. The committee assigned Plaintiff to maximum custody and, on
24

1   February 27, 2019, Plaintiff was transferred to Washington Corrections Center ("WCC"). *Id*.;
2   Dkt. 51, Adamire Dec., ¶ 5.
3         The evidence also shows that, on January 22, 2019, after Plaintiff was transferred to
4   CBCC and placed in administrative segregation, he completed an inmate grievance complaining
5   that DOC Headquarters willingly placed Plaintiff in the same facility with members of the same
6   two STGs with whom Plaintiff fought with at WSP. Dkt. 57, p. 6. Non-party M. Maines
7   responded to the grievance. *Id*. Plaintiff also sent a letter to non-party Caldwell on February 11,
8   2019 regarding the grievance. *Id*. at pp. 7-8. In addition, on January 24, 2019, Plaintiff requested
9   "stress anger management" books related to his feelings surrounding his transfer to the IMU.
10  Dkt. 57, p. 11. Non-party H. Romero responded to Plaintiff's request for books. *Id*.
11  **IV.   Discussion**
12        Defendants contend they are entitled to summary judgment because (1) Plaintiff has failed
13  to show nine Defendants personally participated in any conduct that allegedly violated Plaintiff's
14  constitutional rights; (2) no genuine issue of material fact exists regarding Plaintiff's Eighth
15  Amendment claims; (3) no genuine issue of material fact exists regarding Plaintiff's Fourteenth
16  Amendment claim; and (4) Plaintiff's request to restore lost good time and earned time credits is
17  not proper in a § 1983 action. Dkt. 49.[1]
18      A.  *Personal Participation*
19        In Defendants' Motion for Summary Judgment, Defendants first assert the claims against
20  Defendants Miller, Rainer, Ernst, Smith, Kaech, Baltzell, Adams, Leverington, and Kullojka
21  should be dismissed because they did not personal participate in any conduct related to the

---

[1] Defendants also assert they are entitled to qualified immunity. Dkt. 49. As discussed in this Report and Recommendation, the Court finds there is no genuine issue of material fact remaining regarding Plaintiff's Eighth and Fourteenth Amendment claims. Thus, the Court declines to consider Defendants' qualified immunity argument.

underlying claims in this case. Dkt. 49, pp. 5-6. Defendants concede, for purposes of their Motion for Summary Judgment, Defendants Thrasher, Uglick, Newton, and Scott were present during the meeting where it was decided Plaintiff would be transferred to CBCC. *Id.* Plaintiff did not respond to Defendants' argument or this concession in his Motion for Summary Judgment or Reply to Defendant's Response to his Motion for Summary Judgment. *See* Dkt. 57, 62.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633.

Here, the Amended Complaint contains only general allegations that all Defendants were responsible for his transfer to CBCC. *See* Dkt. 27. Plaintiff does not allege any specific allegations against Defendants Miller, Rainer, Ernst, Smith, Kaech, Baltzell, Adams, Leverington, or Kullojka. *Id*. Plaintiff does not explain what actions these nine Defendants took or failed to take that violated his rights. Therefore, Plaintiff has failed to state a claim for which relief can be granted as to Defendants Miller, Rainer, Ernst, Smith, Kaech, Baltzell, Adams, Leverington, and Kullojka. *See Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims).

1   Furthermore, a review of the evidence fails to show these nine Defendants had any
2   involvement in Plaintiff's transfer to CBCC following the riot at WSP or his placement in
3   CBCC's IMU following a threat to his safety. For example, these nine Defendants were not
4   involved in the recommendations to change Plaintiff's custody status. *See* Dkt. 50-1. These nine
5   Defendants were also not involved in the decisions to transfer Plaintiff to CBCC or to place
6   Plaintiff in protective custody at CBCC. *See id.*; Dkt. 51, Adamire Dec. Furthermore, Plaintiff's
7   grievances, sent after he was transferred to CBCC and placed in protective custody, were not
8   received or responded to by any of the named Defendants. *See* Dkt. 57. Thus, a review of the
9   evidence, viewed in the light most favorable to Plaintiff, fails to show Defendants Miller, Rainer,
10  Ernst, Smith, Kaech, Baltzell, Adams, Leverington, and Kullojka personally participated in the
11  conduct giving rise to the alleged constitutional violations.

12   As the Amended Complaint fails to allege and the evidence fails to show Defendants
13  Miller, Rainer, Ernst, Smith, Kaech, Baltzell, Adams, Leverington, and Kullojka had any
14  involvement in Plaintiff's transfer to CBCC or placement in protective custody, Plaintiff has failed
15  to overcome Defendants' showing that no genuine issue of material fact remains as to any claims
16  alleged against these nine Defendants. Therefore, the Court recommends Defendants' Motion for
17  Summary Judgment be granted as to Defendants Miller, Rainer, Ernst, Smith, Kaech, Baltzell,
18  Adams, Leverington, and Kullojka.[2]

---

[2] The Court notes there is one mention of Defendant Kaech on Plaintiff's Offender Management Network Information ("OMNI") sheet. Dkt. 52-1, p. 9. The OMNI sheet states Defendant Kaech closed a facility plan review on May 9, 2019. *Id*. There is no indication this entry is related to Plaintiff's transfer to CBCC and the entry is dated several months after the events giving rise to this lawsuit. Therefore, the single entry referencing Defendant Kaech does not show personal participation in Plaintiff's transfer to CBCC or placement in protective custody.

REPORT AND RECOMMENDATION - 7

B.  *Failure to Protect*

Defendants allege there is no genuine issue of material fact regarding whether Defendants Thrasher, Uglick, Newton, and Scott failed to protect Plaintiff when Plaintiff was (1) transferred to CBCC and (2) placed in protective custody at CBCC. Dkt. 29.[3]

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials have a duty to protect prisoners from violence suffered at the hands of other prisoners. *Id.* at 833. However, not every injury suffered by a prisoner at the hands of another is a violation of a prisoner's constitutional rights. *Id.* at 834.

In cases alleging an Eighth Amendment violation based on a failure to prevent harm, the plaintiff must first meet an objective component by showing "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010). The plaintiff must also meet a subjective component by showing the prison official acted with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind."). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 832; *see Wallis v. Baldwin*, 70

---

[3] As discussed above, the Court has recommended Defendants Miller, Rainer, Ernst, Smith, Kaech, Baltzell, Adams, Leverington, and Kullojka be dismissed because the evidence shows they did not personally participate in the alleged constitutional violations. Thus, the only remaining Defendants are Defendants Thrasher, Uglick, Newton, and Scott.

F.3d 1074, 1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk he should have perceived but did not," therefore, cannot "be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

1. Transfer to CBCC

Plaintiff alleges he was exposed to a serious risk of harm when he was transferred to CBCC because he was placed at a facility where there are "gang members who are known to be aggressive and violent." Dkt. 27, p. 9. He states he was placed at CBCC around gang members who are affiliated with gang members Plaintiff fought at WSP. *Id*. The evidence shows Defendants Thrasher, Uglick, Newton, and Scott were present during the meeting where it was decided Plaintiff would be demoted to close custody and transferred to CBCC. *See* Dkt. 50-1, p. 12. Plaintiff states it is Defendants' job to know that there was a risk to Plaintiff if he was transferred to CBCC following a fight with members of two STGs that are predominately housed at CBCC. Dkt. 57, 62.

The Ninth Circuit has held that merely housing members of different gangs together is not sufficient to show an Eighth Amendment violation. *See Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013). "The Eighth Amendment does not obligate prisons to separate rival gang members in the absence of a particularized threat." *Castillo v. WCC Superintendent*, 2020 WL 1033663, at *4 (W.D. Wash. Feb. 4, 2020), *report and recommendation adopted*, 2020 WL 1031129 (W.D. Wash. Mar. 3, 2020). It "'would place an unmanageable burden on prison administrators were they required to separate inmates by gangs.'" *Labatad*, 714 F.3d at 1160 (quoting *Mayoral v. Sheahan*, 245 F.3d 934, 939 (7th Cir. 2001)). Furthermore, speculative concerns of being assaulted do not rise to the level of a

1  substantial risk required by the Eighth Amendment. *See Contreras v. Collins*, 50 F. App'x 351
2  (9th Cir. 2002).

3        The evidence and allegations show only that Plaintiff's transfer to CBCC resulted in
4  Plaintiff being housed in the same facility as members from opposite STGs (gangs). Plaintiff's
5  generalized statements that he faced a risk of harm if he was housed at CBCC among different
6  STGs are not sufficient to show Plaintiff faced a substantial risk of serious harm. *See Williams v.*
7  *Wood*, 223 F. App'x. 670, 671 (9th Cir. 2007) ("speculative and generalized fears of harm at the
8  hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to his future
9  health"); *Mooring v. San Francisco Sheriff's Dep't*, 289 F. Supp. 2d 1110, 1118 (N.D. Cal. 2003)
10 (stating "there is no constitutional right for every gang member to be kept separate from
11 members of every other gang and that there must be a showing of a specific risk to the gang
12 member plaintiff to establish the existence of a substantial risk of serious harm.").

13       Furthermore, even if there was a substantial risk of serious harm, there is no evidence
14 Defendants Thrasher, Uglick, Newton, and Scott were subjectively aware of that risk. The
15 evidence contains only general assertions that Defendants Thrasher, Uglick, Newton, and Scott
16 should have known Plaintiff's transfer to CBCC would expose him to a substantial risk of
17 serious harm. *See* Dkt. 27, 57, 62. While Defendants put forth no evidence regarding their
18 knowledge of whether Plaintiff faced a substantial risk of serious harm, Plaintiff has also
19 submitted no evidence showing these four Defendants were aware of a particularized risk of
20 serious harm to Plaintiff and acted with deliberate indifference to that harm. Plaintiff alleges only
21 that Defendants should have known of the risk to Plaintiff because it is their job to know of risks
22 of serious harm. *See* Dkt. 57, 62. He also contends the fact that he was in a fight with other STGs
23 put Defendants on notice he should not have been transferred. Dkt. 62. This is not sufficient to
24

REPORT AND RECOMMENDATION - 10

show these four Defendants had subjective knowledge that Plaintiff faced a substantial risk of serious harm if he was transferred to CBCC. Thus, there is no evidence showing Defendants Thrasher, Uglick, Newton, and Scott were aware Plaintiff would be exposed to a particularized risk of serious harm when he was transferred to CBCC. *See Wright v. Contreras*, 2012 WL 834859, at *5 (S.D. Cal. Mar. 12, 2012) (citing *Farmer*, 511 U.S. at 834 n.8) ("it is not enough that a reasonable person would have known the risk and that the defendant should have known; rather, the defendant must have acted or failed to act despite knowing of a substantial risk of serious harm"); *Castillo*, 2020 WL 1033663 at *5 ("Merely housing rival gang members together, without any additional particularized knowledge of a threat, is not a violation of the Eighth Amendment."); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In conclusion, Plaintiff's transfer to CBCC, which houses rival gang members to Plaintiff's STG, does not alone show a substantial risk of serious harm. Further, the allegations and evidence are insufficient to show Defendants Thrasher, Uglick, Newton, and Scott were aware Plaintiff would be exposed to a particularized risk of serious harm if he was transferred to CBCC. Accordingly, Plaintiff has failed to overcome Defendants' showing that there is no genuine issue of material fact regarding Defendants Thrasher, Uglick, Newton, and Scott's alleged failure to protect Plaintiff when they transferred him to CBCC.

2. Placement in Protective Custody

On January 4, 2019, Plaintiff was placed in protective custody in CBCC's IMU because CBCC staff received information that Plaintiff would be assaulted by prisoners of another race.

Dkt. 27, p. 9. Plaintiff alleges that the threats on his life and placement in the IMU could have been prevented if Defendants had not transferred him to CBCC. *Id*.

As discussed above, there is no evidence showing Defendants Thrasher, Uglick, Newton, or Scott acted with deliberate indifference in transferring Plaintiff to CBCC. Thus, even assuming Plaintiff would not have been threatened and placed in administrative segregation had he not been transferred to CBCC, Plaintiff has not shown his transfer to CBCC violated his constitutional rights. Furthermore, there is no evidence Defendants Thrasher, Uglick, Newton, or Scott were aware of the threat to Plaintiff or personally participated in Plaintiff's placement in the IMU. Rather, the evidence shows CBCC staff, who are not named as defendants in this action, responded reasonably to the threat. CBCC staff members immediately investigated the threat and assigned Plaintiff to protective custody within an hour of becoming aware of the threat. Plaintiff was not assaulted and was transferred to a different facility.

For these reasons, the Court finds there is no genuine issue of material fact regarding Plaintiff's allegations that Defendants violated Plaintiff's Eighth Amendment rights when his safety was threatened and he was placed in protective custody following his transfer to CBCC.

### 3. Conclusion

In summation, the Court finds the evidence shows no genuine issue of material fact exists regarding whether Plaintiff's transfer to CBCC and his placement in protective custody at CBCC violated Plaintiff's Eighth Amendment rights. Therefore, the Court recommends Defendants' Motion for Summary Judgment be granted as to the Eighth Amendment claims alleged against Defendants Thrasher, Uglick, Newton, and Scott.

### C. *Equal Protection*

In the Amended Complaint, Plaintiff states he was "the only prisoner of the black race in that riot at WSP who was transferred to CBCC." Dkt. 27, p. 10. While not clearly pled, in an

abundance of caution, the Court interprets this to be a Fourteenth Amendment Equal Protection claim.

The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To bring a successful equal protection claim, a plaintiff must show differential treatment from a similarly situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). For this differential treatment to give rise to a claim under 42 U.S.C. § 1983, "one must show intentional or purposeful discrimination." *Draper v. Rhay*, 315 F.2d 193, 198 (9th Cir. 1963) (inmate failed to show § 1983 violation in absence of "intentional or purposeful discrimination"). A successful equal protection claim may be brought by a "class of one" when the plaintiff alleges he has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff provides only vague allegations that Defendants transferred Plaintiff to CBCC because of his race. *See* Dkt. 27, p. 10. In his Reply, Plaintiff states he was the only African American prisoner involved in the riot at WSP that was sent to CBCC; "every other black [prisoner] was placed back on to the WSP mainline[.]" Dkt. 62, p. 3. Plaintiff, however, does not explain how he is similarly situated to the other inmates. He also failed to allege any facts showing there was discriminatory intent or purpose behind his transfer. *See Draper*, 315 F.2d at 198. Thus, Plaintiff has not stated an Equal Protection claim.

Moreover, the evidence shows Plaintiff was transferred because of security and safety concerns. Plaintiff initiated a fight that turned into a riot at WSP. Dkt. 57. DOC employees recommended Plaintiff be demoted to maximum custody due to Plaintiff's involvement in the riot and his infraction history. *See* Dkt. 50-1. Further, Plaintiff had to remain separate from

inmates housed in WSP-main, the area where the other African American inmates involved in the riot were housed. *See* Dkt. 50-1, p. 15 (noting Plaintiff "keep[s] separates at WSP-Main" and WSP-IMU). There is no evidence showing Defendants Thrasher, Uglick, Newton, and Scott's decision to transfer Plaintiff to CBCC was based on intentional or purposeful discrimination. *See Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998) (Plaintiff "must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."); *Thornton v. Schwarzenegger*, 2008 WL 5412361, at *3 (E.D. Cal. Dec. 30, 2008), *subsequently aff'd*, 430 F. App'x 615 (9th Cir. 2011) (stating "[s]afety concerns about individual prisoners would have a rational relation[ship] to a legitimate penological purpose" and finding the plaintiff did not sufficiently allege he was transferred because he was part of a protected class).

For these reasons, the Court finds Plaintiff has not overcome Defendants' summary judgment showing that Plaintiff's transfer to CBCC did not violate Plaintiff's Fourteenth Amendment Equal Protection rights. Therefore, the Court recommends Defendants' Motion for Summary Judgment be granted as to Plaintiff's Equal Protection claim.

D.  *Habeas Relief*

Defendants next assert Plaintiff's request for reinstatement of his lost good time and earned time credits should be dismissed without prejudice as it is not proper in a § 1983 action. Dkt. 49, pp. 6-8. An "action lying at the core of habeas corpus is one that goes directly to the constitutionality of the prisoner's physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration. With regard to such actions, habeas corpus is now considered the prisoner's exclusive remedy." *Preiser v. Rodriguez*, 411 U.S. 475, 503 (1973) (internal quotation omitted). "A civil rights action, in contrast, is the proper method of challenging conditions of confinement." *Badea v. Cox*, 931 F.3d 573, 574 (9th Cir. 1991).

1    Here, Plaintiff's request for reinstatement of his lost good time and earned time credits
2 following a disciplinary infraction and placement in the IMU is a challenge to the duration of his
3 sentence. *See Hernandez v. Cate*, 2011 WL 63606, at *2 (C.D. Cal. Jan. 4, 2011) (finding the
4 petitioner's challenge to a disciplinary infraction and loss of 90 days of good time credits
5 constituted a challenge to the duration or execution of the petitioner's sentence and was properly
6 raised in a § 2254). Plaintiff's challenge to the duration of his confinement is properly raised in a
7 § 2254 petition, not a § 1983 complaint. Therefore, Plaintiff's claims related to the
8 constitutionality of his physical confinement are not cognizable in this § 1983 action.

9    Accordingly, the Court recommends Defendants' Motion for Summary Judgment be
10 granted regarding Plaintiff's request for reinstatement of his good time and earned time credits.
11 *See Preiser*, 411 U.S. at 487 (holding that even when the restoration of good-time credits would
12 not result in immediate release, but only shorten the length of actual confinement in prison,
13 habeas corpus is still the appropriate remedy); *Edwards v. Balisok,* 520 U.S. 641, 643–44 (1997)
14 (holding the sole remedy in federal court for a prisoner seeking restoration of good-time credits
15 is a writ of habeas corpus).

16    **V.    Plaintiff's Motion for Summary Judgment**

17    To the extent Plaintiff's Motion for Summary Judgment is, in fact, a motion for summary
18 judgment and not a response to Defendants' Motion for Summary Judgment, the Court
19 recommends Plaintiff's Motion for Summary Judgment be denied.

20    First, Plaintiff's Motion for Summary Judgment is untimely. In the Pretrial Scheduling
21 Order, the Court directed the parties to file and serve any dispositive motions on or before March
22 25, 2020. Dkt. 46. Plaintiff did not file his Motion for Summary Judgment until May 6, 2020.
23 Dkt. 57. While the Court granted Plaintiff an extension of time to respond to Defendants' Motion
24

REPORT AND RECOMMENDATION - 15

for Summary Judgment, the Court did not extend the deadlines for filing dispositive motions. *See* Dkt. 56. Thus, Plaintiff's Motion for Summary Judgment is untimely.

Second, as discussed in this Report and Recommendation, Defendants have shown there is no genuine issue of material fact remaining in this case and summary judgment for Defendants is appropriate. The Court has considered the evidence and arguments asserted by Plaintiff and finds Plaintiff has not overcome Defendants' summary judgment showing, nor has Plaintiff shown he is entitled to summary judgment in this case. Accordingly, the Court recommends Plaintiff's Motion for Summary Judgment be denied.

### VI.    IFP on Appeal

Plaintiff is proceeding *in forma pauperis* ("IFP") in this case. Dkt. 4. IFP status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Here, Plaintiff fails to identify a genuine issue of material fact and the law is clear that Defendants did not violate Plaintiff's constitutional rights by transferring him to CBCC following his involvement in a prison riot at WSP. As such, the Court recommends Plaintiff's IFP status be revoked for purposes of any appeal.

### VII.    Conclusion

In conclusion, the Court finds the evidence fails to show Defendants Miller, Rainer, Ernst, Smith, Kaech, Baltzell, Adams, Leverington, and Kullojka personally participated in any of the

alleged unconstitutional conduct. The Court also finds no genuine issue of material fact exists regarding Plaintiff's Eighth and Fourteenth Amendment claims as alleged against the remaining Defendants – Defendants Thrasher, Uglick, Newton, and Scott. Further, Plaintiff's request for reinstatement of his good time and earned time credits is not cognizable in a § 1983 action.

Accordingly, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 49) be granted and Plaintiff's Motion for Summary Judgment (Dkt. 57) be denied. The Court recommends Plaintiff's Eighth and Fourteenth Amendment claims be dismissed with prejudice, Plaintiff's request for reinstatement of his good time and earned time credits be dismissed without prejudice, Plaintiff's IFP status be revoked on appeal, and this case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on July 17, 2020, as noted in the caption.

Dated this 2nd day of July, 2020.

David W. Christel
United States Magistrate Judge